IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| The Inclusive Communities Project, Inc., <br><br> Plaintiff, <br><br> v. <br><br> The United States Department of Treasury and Office of Comptroller of the Currency <br><br> Defendants. | No. 3:14-3013-D |

**DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS**

Dated: March 16, 2015

Respectfully submitted
BENJAMIN C. MIZER
 Acting Assistant Attorney General

JOHN R. PARKER
Acting United States Attorney
LISA ROBIN HASDAY
U.S. ATTORNEY'S OFFICE
1100 Commerce St., 3rd Floor
Dallas, TX 75242
(214) 659-8737
lisa.hasday@usdoj.gov

s/ Marsha Stelson Edney
BRIAN KENNEDY
MARSHA STELSON EDNEY
(DC Bar No. 414271)
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W. Rm 7148
Washington DC 20001
(202) 514-4520
Marsha.Edney@usdoj.gov
Attorneys for Defendan

## INTRODUCTION

Plaintiff's opposition brief demonstrates the fundamental fallacy on which this lawsuit is premised, namely that the Fair Housing Act's ("FHA") general mandate that federal agencies administer relevant programs in a "manner affirmatively to further" fair housing requires Defendants to take specific actions to consider the racial characteristics of the location of housing developed with Low-Income Housing Tax Credits ("LIHTC"). The law contains no such requirement. The relevant statutory scheme specifically delegates the selection of the location of LIHTC projects to the State housing agencies, not the federal government. 26 U.S.C. § 42(h)(1), (h)(3) and (m).[1] Because Plaintiff has not and cannot point to any statute or regulation that requires Defendants to take the specific steps it contends Defendants should take, Plaintiff's claims fail as a matter of law.

The FHA declares that it is "the policy of the United States to provide . . . for fair housing," and prohibits discrimination because of race, color, religion, familial status, national origin or disability. *See generally* 42 U.S.C. § 3601 *et seq.* The FHA further states that "[a]ll executive departments and agencies shall administer their programs and activities relating to housing and urban development (including any Federal agency having regulatory or supervisory authority over financial institutions) in a manner affirmatively to further the purposes of this subchapter . . . ." 42 U.S.C. §3608(d). The Act leaves open the precise scope and method of federal agencies' obligation to affirmatively further fair housing.

LIHTC is a tax provision intended to encourage the construction and rehabilitation of rental housing occupied by, and affordable to, low-income tenants by offering tax incentives to developers to develop "qualified low-income housing project[s]." 26 U.S.C. §§ 42; 42(g)(1). The statute requires State agencies to select the projects and monitor compliance with the LIHTC requirements. *Id*. § 42(h)(1), (h)(3) and (m). Contrary to Plaintiff's suggestion, neither

---

[1] In fact, section 42(m)(1)(A)(iii) specifically mandates that the local housing credit agency require that a "comprehensive market study of the housing needs of low-income individuals in the area to be served by the project is conducted before the credit allocation is made." This delegation to the local authorities makes sense because any assessment of local housing needs is simply not within the expertise of either Defendant.

Defendant is required to determine or approve the specific location of the housing that will be eligible to qualify for LIHTCs.  Rather, the Defendants' role is to ensure compliance with the specific statutes that each Defendant is charged with administering.[2]  The Department of Treasury's ("Department") focus is on whether the States comply with the terms of 26 U.S.C. § 42(m) and whether entities developing LIHTC projects qualify for the tax credits under that section.  And the Office of the Comptroller of the Currency's ("OCC") primary role is to ensure that national banks comply with the public welfare investment statute, 12 U.S.C. § 24 (Eleventh), and that the investment will not violate the safety and soundness limitations set forth in the statute.

This Court should reject Plaintiff's attempt to rewrite the statutory scheme by reassigning responsibility for the location of LIHTC projects from the local housing authorities to Defendants.  Given the broad general language in the FHA's provision requiring agencies to affirmatively further fair housing, and Defendants' attenuated role regarding the location of the projects that receive LIHTCs, Plaintiff's contention that Defendants have violated a specific duty under the FHA is meritless.  As a threshold matter, for the reasons explained in detail below, this Court lacks subject matter jurisdiction over Plaintiff's FHA claims because there is no waiver of sovereign immunity that encompasses those claims.  Plaintiff also fails to state a claim under the Constitution and the civil rights statutes because it has not adequately alleged discriminatory intent.  Finally, Plaintiff does not satisfy the standing requirements under Article III of the Constitution.

---

[2] Throughout the Opposition brief, Plaintiff conflates the very different roles each Defendant has regarding LIHTC projects.  Moreover, Plaintiff often generally refers to actions or inactions taken by "Defendants" without clarifying to which Defendant it is referring.  In addition, Plaintiff attempts to bolster its argument by stating that it could "plead in an amended complaint" certain facts.  Pl. Opp. at 4, 9.  This Court should reject Plaintiff's attempt to amend its pleading in an opposition brief.  *See Benoit v. Dep't. of Agriculture*, 608 F.3d 17, 21 (D.C. Cir. 2010).

# ARGUMENT

I. PLAINTIFF'S CLAIMS UNDER SECTION 3608 OF THE FHA MUST BE DISMISSED BECAUSE THERE IS NO APPLICABLE WAIVER OF SOVEREIGN IMMUNITY.

   A. The APA's Limited Waiver Of Sovereign Immunity Does Not Apply Here Because Plaintiff Has An Other Adequate Remedy.

Despite Plaintiff's assertion to the contrary, the Administrative Procedure Act's ("APA") waiver of sovereign immunity does not apply to Plaintiff's claims. *See* Plaintiff's Brief Opposing Motion to Dismiss ("Pl. Opp.") at 10-11. Plaintiff's sole reliance on the language of section 702 of the APA is misplaced. While section 702 does provide a limited waiver of sovereign immunity, that waiver is qualified by the conditions set forth in section 704 of the APA. *See Van Allen v. Dept. of Veterans Affairs,* 925 F.Supp.2d 119, 125 (D.D.C. 2013) ("While plaintiff states his claims under the APA, which provides a waiver of sovereign immunity at 5 U.S.C. § 702, the waiver is only applicable to 'final agency action for which there is no other adequate remedy in a court.' 5 U.S.C. § 704."); *Transohio Sav. Bank v. Dir., Ofc. of Thrift Supervision,* 967 F.2d 598, 607 (D.C. Cir. 1992) ("Whether § 702 of the APA justifies district court jurisdiction over [plaintiff's] case depends on whether [its] claims fall under any of the . . . limitations on the APA's waiver of sovereign immunity. The APA excludes from its waiver of sovereign immunity . . . claims for which an adequate remedy is available elsewhere . . . ."). Here, as detailed in Defendants' opening memorandum, Plaintiff has an "other adequate remedy" against the state housing agency and therefore, the APA's waiver of sovereign immunity does not apply.[3] Defendants' Memorandum in Support of Motion to Dismiss ("Def. Mem.") at 11-14.

Plaintiff also clearly misconstrues the meaning of an "other adequate remedy" under the APA. 5 U.S.C. § 704. Plaintiff erroneously asserts that its prior lawsuit against the state housing

---

[3] Plaintiff misstates the holding in *Alabama Coushatta Tribe v. United States*, 757 F.3d 484 (5th Cir. 2014). The Fifth Circuit did not hold that the waiver in section 702 exists without regard to the section 704 requirements but rather discussed the difference between the two distinct types of APA claims that section 702 covers. *Id*. at 489, 490 (dismissing lawsuit for lack of subject matter jurisdiction where plaintiff brought impermissible programmatic challenge and failed to challenge any specific agency action).

agency, TDHCA, *see Inclusive Cmtys Project, Inc. v. Texas Dep't of Hous and Cmty Affairs*, Civil Action No. 3:08-CV-0546 (N.D. Tex.) ("ICP I"), does not constitute an "other adequate remedy" because (1) TDHCA is not a federal agency subject to 42 U.S.C. § 3608(d); and (2) Plaintiff cannot obtain the exact same injunctive relief from TDHCA that it is seeking from Defendants. Pl. Opp. at 12-13. In determining whether there is an "other adequate remedy," however, the focus is on whether Plaintiff could seek relief from another party for its alleged injury, not whether any such relief would be identical to that sought in the lawsuit. *See Coker v. Sullivan*, 902 F.2d 84, 90 n.5 (D.C. Cir. 1990) (the APA "bar[s] suits where a plaintiff's injury may be remedied in another action, even if that remedy would have no effect upon the challenged agency action") (citation omitted); *see also Jersey Heights Neighborhood Ass'n v. Glendening,* 174 F.3d 180, 191-92 (4th Cir. 1999) (dismissing APA claim against federal defendants because court found that a Title VI claim pursued directly against the state provided an adequate alternative remedy).

In this case, Plaintiff alleges an FHA violation because the Dallas-area LIHTC units are predominately located in "racially segregated minority areas" and claims that it is injured because it needs to use additional resources to assist its clients to obtain affordable housing in non-minority areas. Compl. ¶¶ 1, 11. As explained in Defendants' opening memorandum, Plaintiff already availed itself of a remedy for the same alleged acts of discrimination (geographical location of the LIHTC units) and the same alleged injury (need to expend additional resources) in its prior suit against TDHCA. Def. Mem. at 11-14. It is of no consequence that Plaintiff could not obtain identical injunctive relief from TDHCA and the Defendants. *See Garcia v. Vilsack*, 563 F.3d 519, 522, 525 (D.C. Cir. 2009) (an alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the "'same genre'") (citation omitted); *Coker*, 902 F.2d at 90 n.5 (an alternative remedy is adequate if it would remedy the injury about which plaintiff complains). Therefore, Plaintiff's assertion

4

that it does not have an "other adequate remedy" must be rejected.[4]

> B. Plaintiff's Claim that Defendants Have Failed To Affirmatively Further Fair Housing Is Not Reviewable Under Section 706 of the APA.

In their opening brief, Defendants explained that Plaintiff had failed to identify a discrete agency action that Defendants were legally required to take under section 3608(d) of the FHA and therefore, the claim that Defendants have violated a duty to affirmatively further fair housing by failing to take action or adopt standards was not reviewable under section 706(1) of the APA. Def. Mem at 14-17. Plaintiff's Opposition brief concedes that review under 706(1) is not available for "non-compliance with broad statutory mandates," Pl. Opp. at 14, yet summarily contends that review under section 706(2) of the APA is appropriate. *Id*. at 15. Section 706(2)(A) permits courts to set aside "agency action, findings, or conclusions" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . ." 5 U.S.C. § 706(2)(A). Plaintiff fails to explain exactly what "agency action, findings or conclusions" it seeks to have reviewed under section 706(2) and merely states that because section 706(2) was the remedial provision invoked in three earlier cases enforcing the affirmatively further fair housing provisions in section 3608, it is also appropriate here. Pl. Opp. at 15. (citing cases).[5] This assertion should be summarily rejected.

In order for section 706(2) to apply, there still must be some "agency action" for the Court to review. And any claim that there is some reviewable "final agency action" is contrary to the allegations in the Complaint which contend that Defendants have refused "to adopt any …

---

[4] Plaintiff's reliance on *Sackett v. EPA*, 132 S.Ct. 1367, 1372 (2012) is misplaced. Pl. Opp at 13. In *Sackett*, the Court found no "other adequate remedy" because the relevant statute did not permit the plaintiff to initiate an enforcement proceeding. In contrast, here, the FHA provides a direct statutory right for Plaintiff to sue the parties directly responsible for selecting LIHTC project locations (thereby redressing its alleged injury). *See* 42 U.S.C. §§ 3604, 3613(a). Moreover, Plaintiff's specifically requested remedies could not be awarded even if this Court had jurisdiction; any relief under the APA would be limited to a determination that Defendants are not in compliance with section 3608(d), but the Court could not order Defendants to take specific actions. *See Norton v. So. Utah Wilderness Alliance ("SUWA")*, 542 U.S. 55, 63 (2004).

[5] The cases Plaintiff cites for the proposition that it can seek relief under section 706(2) are distinguishable. Two of the decisions are no longer persuasive because they were decided before *SUWA*, 542 U.S. at 65, which explained what constitutes reviewable agency action. The third case, *Thompson v. Dep't Hous. and Urban Dev.*, 348 F.Supp.2d 398 (D. Md. 2005), failed to consider *SUWA* when it determined that a pattern of agency inaction was reviewable agency action.

5

standards" and refused "to take any action" regarding the duty to affirmatively further fair housing. *See e.g.,* Compl. ¶¶ 132, 136. Likewise, even in its opposition brief, Plaintiff concedes that it is seeking relief for "agency non-compliance with broad statutory mandates." Pl. Opp. at 14. The Supreme Court has specifically rejected broad programmatic attacks as reviewable "agency action" under 706(2). *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (rejecting challenge to BLM's land withdrawal review program, couched as unlawful "agency action" and holding that "respondent cannot seek *wholesale* improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made) (emphasis in original). "Under the terms of the APA, [Plaintiff] must direct its attack against some particular 'agency action' that causes it harm." *Id.* This Court should likewise reject Plaintiff's attempt to obtain *wholesale* improvement, not of any particular agency action, but of the way the LIHTC statute is administered.

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 3604 OF THE FHA

Plaintiff's position that section 3604(a) applies to this case because Defendants "otherwise make unavailable" housing lacks support. Pl. Opp. at 16-21. As explained in Defendants' opening memorandum, section 3604 only applies to "discriminatory housing practices" and does not apply to entities or actors, like Defendants, that are so distant from the business of providing housing or housing-related services. Def. Mem at 18-19. Plaintiff's conclusory statement that section 3604 applies here because "Defendants' approval of the banks' investments in the projects perpetuates racial segregation and is directly connected to the selling, purchasing, renting, and otherwise making unavailable housing units," Pl. Opp. at 17, has already been rejected in the only other case in which a plaintiff tried to sue the OCC under section 3604. *See Jones v. Comptroller of the Currency*, 983 F. Supp. 197, 202 (D.D.C. 1997) ("In the absence of any direct participation in the provision of housing or housing services, the OCC cannot engage in discriminatory housing practices under Title VIII[.]"). The cases cited by Plaintiff to support their section 3604 claim are readily distinguishable. *See* Pl. Opp. at 20. Each involved an action

6

against the city and/or public housing authority tasked with determining where affordable housing should be built and thus, the challenged actions were directly connected to the provision of housing.

Here, by contrast, the Defendants are far removed from the actual provision of either affordable housing or housing-related services. With respect to LIHTC investments, the OCC's primary responsibility is to ensure that the banks that invest in LIHTC projects are financially sound. The Department is responsible for making sure that States do not allocate too many LIHTCs, and that the entities seeking tax credits are eligible for the credit. Defendants have no direct connection with the individuals who will eventually rent the housing built with LIHTCs. And, despite Plaintiff's contention that Defendants should be involved in determining the location of LIHTC units, the statutory scheme enacted by Congress does not contemplate or require such involvement. Finally, given that the purpose of LIHTCs is to encourage the provision of affordable housing, and also, that Defendants' roles are to ensure compliance with the relevant tax and banking statutes in funding LIHTC projects, Defendants, by definition, are not "making housing otherwise unavailable." Plaintiff's section 3604 claims fail as a matter of law.

### III. PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 1982 AND THE EQUAL PROTECTION CLAUSE

Plaintiff's contention that it has alleged facts to show discriminatory intent as required to state a claim under Section 1982 and the Equal Protection Clause is erroneous. Pl. Opp. at 21-23. In an attempt to show discriminatory intent, Plaintiff's brief points to numerous generic allegations in its Complaint alleging: (1) the degree and extent of the racial segregation in the Dallas area; (2) that the majority of the LIHTC units are increasingly located in racially segregated areas; (3) that LIHTCs are located in unsafe areas; (4) that Defendants are willing to accept racial segregation, and are perpetuating racial segregation; (5) that Defendants have failed to issue any guidelines or regulations regarding geographical location of LIHTCs; and (6) that Defendants have approved national banks' investments in LIHTC projects. Pl. Opp. at 22-23.

7

These allegations simply do not establish discriminatory intent. First, most of the paragraphs do not even discuss actions taken by these particular Defendants and, second, none of the paragraphs indicate in any way that Defendants took any of the alleged actions (or inactions) for a discriminatory purpose as required to state a claim under the Civil Rights Act or the Equal Protection Clause.[6] *See Dorsey v. United States*, 132 S. Ct. 2321, 2344 (2012). As explained fully in Defendants' opening memorandum, neither knowledge nor a mere willingness to accept racial segregation is enough. Def. Mem at 19-21; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("purposeful discrimination requires more than 'intent as volition or intent as awareness of consequences.'") (quoting *Pers. Adm'r of Mass. v. Feeny*, 442 U.S. 256, 279 (1979)).[7] Absent allegations of discriminatory intent, Plaintiff's civil rights and constitutional claims fail as a matter of law and must be dismissed.

IV. PLAINTIFF DOES NOT HAVE STANDING

Plaintiff's assertion that it satisfies the constitutional requirements for standing is based on its misguided view that section 3608(d) of the FHA requires these Defendants to affirmatively regulate the location of LIHTC units. Pl. Opp. at 4. According to Plaintiff, its alleged injury is "fairly traceable" to Defendants because (1) Treasury has failed to regulate LIHTC project locations in the tax statute, 26 U.S.C. § 42(m), and (2) the OCC has approved national banks' investments in LIHTC projects that are in racially segregated areas. These "actions" are alleged to be a cause of the LIHTC units being in racially segregated areas which decreases supply in non-minority areas, requiring Plaintiff to use additional resources to assist its clients. Pl. Opp. at

---

[6] The only allegations in the Complaint that even arguably allege "agency action" are ¶¶ 59-64 (detailing the national bank investments that the OCC approved in the Dallas area) and ¶¶ 72-76 (discussing revisions OCC made to its regulations more than twelve years ago). However, none of these paragraphs allege or demonstrate that OCC took these "actions" for a discriminatory purpose.

[7] Plaintiff's reliance on *Clients Council v. Pierce*, 711 F.2d 1406 (8th Cir. 1983), Pl. Opp. at 22, is misplaced. In that case, HUD took specific actions to investigate allegations of discrimination by the state housing agency and made findings of non-compliance, yet repeatedly failed to take any actions regarding those findings and instead continued to approve funding to the state agency. *Id*. at 1410-23. Additionally, the Court found that the objective evidence contained in HUD's own files mandated the conclusion that the agency officials acted because of a discriminatory purpose. *Id*. at 1426. Plaintiffs have not made comparable allegations here, and there is no basis for doing so.

4- 6.

As explained *supra*, there is no legal support for Plaintiff's contention that section 3608(d) obligates Defendants to take any particular actions. Plaintiff has not pointed to any legal authority that specifically requires these Defendants to regulate and/or take into account the racial composition of the locations of LIHTC projects. And most importantly, the statutory authority that does exist delegates the selection of the location of LIHTC projects to the State agencies. *See* 26 U.S.C. §42 (h)(1), (h)(3) and (m). Given the roles that independent third parties (state agencies and developers) not before this Court play in selecting the location of LIHTC projects, as well as the limited role that Defendants play regarding LIHTCs, Plaintiff cannot show that its alleged injury (use of additional resources) is fairly traceable to Defendants' actions. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (standing more difficult to establish when causation and redressability hinge on the response of a third party to government action).

Finally, Plaintiff is simply wrong that its alleged injury would likely be redressed by a favorable decision. First, as stated above, the geographic location of the LIHTC units depends on third parties not before this Court. Second, despite Plaintiff's assertions to the contrary, *see* Pl. Opp. at 8, the specific injunctive relief it seeks is not permitted under the APA, which Plaintiff concedes is the sole waiver of sovereign immunity under section 3608.[8] *Id*. It does not matter that this case did not originate as a federal administrative proceeding. The law is clear: under the APA if a plaintiff challenges agency inaction (as is the case here), and if the form of action itself is not legally mandated, then a court may only order the agency to take action, and may not direct *how* the agency must act. *See SUWA*, 542 U.S. at 63. Thus, at most, this Court

---

[8] Plaintiff cited three cases in support of its contention that the Court can order the specific injunctive relief Plaintiff seeks. Pl. Opp. at 8. In two of the three cases, the ordered relief was not premised on the APA, but on findings that the defendants had intentionally discriminated in violation of the Constitution. *See Clients Council*, 711 F.2d at 1426 (finding of intentional discrimination under 5th Amendment); *Young v. Pierce,* 685 F. Supp. 986, (E.D. Tex. 1988) (remedial order entered upon finding of intentional discrimination under Constitution). And *NAACP v. Kemp*, 721 F.Supp. 361, 367-68 (D. Mass 1989), which was brought under the FHA, was decided prior to the Supreme Court's decision in *SUWA*, and in any event, even that Court recognized the general principle that the APA does not ordinarily empower a court to require particular results.

could find that Defendants have not taken action "affirmatively to further fair housing" for LIHTC projects but could not order Defendants to take any specific actions.

## CONCLUSION

For the foregoing reasons, as well as those in Defendants' opening memorandum, this Court should grant Defendants' Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim.

Dated: March 16, 2015                              Respectfully submitted,

                                                   BENJAMIN C. MIZER
                                                   Acting Assistant Attorney General

                                                   JOHN R. PARKER
                                                   Acting United States Attorney
                                                   LISA ROBIN HASDAY
                                                   U.S. ATTORNEY'S OFFICE
                                                   1100 Commerce St., 3rd Floor
                                                   Dallas, TX 75242
                                                   (214) 659-8737
                                                   lisa.hasday@usdoj.gov

                                                   s/ Marsha Stelson Edney
                                                   LESLEY FARBY
                                                   Assistant Branch Director
                                                   MARSHA STELSON EDNEY
                                                   Senior Trial Counsel
                                                   (DC Bar No. 414271)
                                                   U.S. DEPARTMENT OF JUSTICE
                                                   Civil Division, Federal Programs Branch
                                                   20 Massachusetts Avenue, N.W. Rm 7148
                                                   Washington DC 20001
                                                   (202) 514-4520
                                                   Marsha.Edney@usdoj.gov

                                                   Attorneys for Defendant

**Certificate of Service**

       On March 16, 2015, I electronically submitted the foregoing document with the clerk of court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                                         s/ Marsha Stelson Edney
                                         Marsha Stelson Edney