IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE INCLUSIVE COMMUNITIES PROJECT, INC., | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. 3:14-CV-3013-D |
| VS. | § § | |
| THE UNITED STATES DEPARTMENT OF TREASURY, et al., | § § § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff The Inclusive Communities Project, Inc. ("ICP") brings this action against defendants U.S. Department of the Treasury ("Treasury") and Office of the Comptroller of the Currency ("OCC"), alleging claims under 42 U.S.C. § 3608(d), 42 U.S.C. § 3604(a), 42 U.S.C. § 1982, and the Fifth Amendment, essentially contending that defendants' administration of the Low Income Housing Tax Credit ("LIHTC") program created under the Tax Reform Act of 1986 is perpetuating racial segregation in LIHTC units in the city of Dallas and relegating minority families to unequal conditions of slum, blight, and distress. Defendants move to dismiss, contending that ICP lacks Article III standing, that ICP's § 3608 claim is barred by sovereign immunity and otherwise unreviewable, and that some of ICP's claims fail on the merits. For the reasons explained, the court grants the motion in part and denies it in part and grants ICP leave to replead.

I

The court will briefly recount the background facts and procedural history given the parties' familiarity with the record and the limited scope of this memorandum opinion and order.[1]

42 U.S.C. § 3608(d) provides:

> All executive departments and agencies shall administer their programs and activities relating to housing and urban development (including any Federal agency having regulatory or supervisory authority over financial institutions) in a manner affirmatively to further the purposes of this subchapter and shall cooperate with the Secretary to further such purposes.

---

[1]Although this memorandum opinion and order addresses the merits of some of ICP's claims, it does not decide whether ICP can prevail on the overarching tenet of its case.  For example, defendants make this argument in their reply memorandum:

> Plaintiff's opposition brief demonstrates the fundamental fallacy on which this lawsuit is premised, namely that the Fair Housing Act's ("FHA") general mandate that federal agencies administer relevant programs in a "manner affirmatively to further" fair housing requires Defendants to take specific actions to consider the racial characteristics of the location of housing developed with [LIHTCs].  The law contains no such requirement.

Ds. Reply Mem. 1.  At oral argument, defendants' counsel maintained:

> I think this lawsuit is premised on a fundamental fallacy that the general mandate in the [FHA] requires these particular defendants to take very specific actions to consider and regulate the location of housing developed with LIHTC, and there is no such requirement in the [FHA].

Tr. Oral Arg. 14.  This memorandum opinion and order does not decide this question.

- 2 -

42 U.S.C. § 3604(a) provides, in pertinent part, that

> it shall be unlawful . . . [t]o refuse to sell or rent after the making
> of a bona fide offer, or to refuse to negotiate for the sale or
> rental of, or otherwise make unavailable or deny, a dwelling to
> any person because of race, color, religion, sex, familial status,
> or national origin.

Under the LIHTC program, developers who construct or rehabilitate qualified low-income housing projects can obtain tax credits.  According to ICP's complaint, Treasury is the federal agency charged with administering the LIHTC program.  Treasury, through the Internal Revenue Service ("IRS"), issues rules and other guidance governing taxpayers' entitlement to LIHTCs, and the IRS denies, or requires recapture of, credits if taxpayers are shown not to be entitled to them.

ICP alleges that OCC is an independent bureau of Treasury that serves as the primary federal regulator of national banks and the public welfare investment ("PWI") authority established in 12 U.S.C. § 24 (Eleventh).  National banks are authorized to make investments in affordable housing because, under OCC regulations, projects that qualify for LIHTCs are acceptable PWIs.  OCC is required to approve all national bank investments in LIHTC units by finding that the investment in question is designed primarily to promote the public welfare.

ICP alleges that defendants are not administering their programs and activities relating to housing in a manner affirmatively to further fair housing and are in fact administering the LIHTC program in a manner that perpetuates racial segregation and unequal conditions in affordable housing in the city of Dallas.  In particular, they allege that

national banks are a substantial source of funding for LIHTC units in the Dallas area; that OCC has approved all of the national bank or related national banking entities' investments and related involvement in Dallas area LIHTC units as PWIs; that OCC has approved such investments in racially segregated minority areas marked by slum, blight, and distress; that defendants' actions approving such investments in racially segregated minority locations subject to slum, blight, and distress steer LIHTC units into those areas, making such units unavailable in non-minority-concentrated areas without slum, blight, and distress; that there would be more LIHTC units available outside such areas for ICP's clients and other housing voucher participants if defendants did not continue to approve national bank or related national banking entities' investments and related involvement in LIHTC units in racially segregated minority locations subject to slum, blight, and distress; and that the continued application of policies by Treasury and OCC for the regulation of the LIHTC program and national bank or related national banking entities' investments and related involvement directly affects the disproportionate distribution of those units by approving the use of LIHTCs for units and locations that perpetuate racial segregation in areas marked by slum, blight, and distress, thereby injuring ICP and its clients.

Defendants move to dismiss this action, contending that it is barred by sovereign immunity, that ICP lacks standing, and that ICP has failed in certain respects to state a claim on which relief can be granted.  ICP opposes the motion.  The court has heard oral argument.

II

Treasury and OCC raise standing as their final argument, but the court will address it first.

A

Treasury and OCC maintain that ICP lacks Article III standing.  To establish Article III standing, ICP must show that it has "suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Because defendants' motion to dismiss is not supported by evidence, the court must decide the jurisdictional question based on the complaint alone, and it must presume that the allegations of the complaint are true.  *See, e.g., Sullo & Bobbitt, PLLC v. Abbott*, 2012 WL 2796794, at *4 (N.D. Tex. July 10, 2012) (Fitzwater, C.J.), *aff'd*, 536 Fed. Appx. 473 (5th Cir. 2013).  The court cannot dismiss the complaint if the allegations are sufficient.  *See Hunter v. Branch Banking & Trust Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)).

B

1

Although Treasury and OCC do not concede that ICP has suffered injury in fact, they do not specifically challenge this element.  *See* Ds. Mem. 21-22.  The court holds that ICP's complaint adequately alleges the element of injury in fact.  *See* Compl. ¶ 11 (alleging that

when sufficient numbers of LIHTC units are not located in low poverty, non-minority concentrated areas, ICP must rely on private market landlords to provide housing, which increases the ICP resources needed to assist clients in obtaining affordable units in non-minority concentrated areas), and ¶ 102 (alleging that defendants' actions have injured ICP).

2

ICP has also adequately pleaded that its injuries are fairly traceable to defendants' actions.  As ICP's counsel explained at oral argument, ICP relies on the assertion that for a national bank to own a LIHTC unit and take a tax credit, OCC and Treasury must approve the specific investment.  *See* Tr. Oral Arg. 28 ("Everybody makes all the decisions and it comes down to OCC and Treasury, are they going to let the national bank own it and take the tax credits.  That is nobody else's decision but theirs.  If they say no, the tax credits don't get awarded for that project and the bank doesn't get to own it.").  This theory is pleaded in ICP's complaint.  *See, e.g.,* Compl. ¶¶ 16, 59-60, 101, and 102.  In particular, ICP alleges:

> Defendant Treasury's and Defendant OCC's continued application of policies for the regulation of the LIHTC program and national bank or related national banking entities investments and related involvement including ownership of LIHTC units directly affects the disproportionate distribution of those units by approving the use of LIHTC for units in locations that perpetuate racial segregation in areas marked by slum, blight, and distress.  But for the defendants' actions, there is at least a reasonable probability that there would be a substantial increase in LIHTC units outside of these areas.  Defendants' actions injure ICP and ICP's clients.

*Id.* ¶ 102.  *See also id.* ¶¶ 103-131 (pleading examples of projects that defendants approved and that ICP alleges are "[i]nstances of the Defendants' continued exercise of their

supervisory and regulatory authority to approve continued investment in racially segregated minority locations marked by slum, blight, and distress." (bold font omitted)).

"[T]he fairly traceable element of standing doctrine imposes a causation standard that is lower than the tort standard of proximate causation." *TF-Harbor, LLC v. City of Rockwall, Tex.*, 18 F.Supp.3d 810, 820 (N.D. Tex. 2014) (Fitzwater, C.J.) (citing *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011)), *aff'd*, 592 Fed. Appx. 323 (5th Cir. 2015); *see also, e.g., Rothstein v. UBS AG*, 708 F.3d 82, 91-92 (2d Cir. 2013) (collecting cases and discussing difference between "fairly traceable" standard and proximate causation). "[T]he fairly traceable element does not require that the defendant's challenged action be the last act in the chain of events leading to the plaintiff's injury. *TF-Harbor*, 18 F.Supp.3d at 820 (citing *Bennett*, 520 U.S. at 168-69). The court holds that ICP has adequately pleaded this element of Article III standing.

3

Finally, ICP has adequately pleaded that its injuries will likely be redressed by a favorable decision.

Defendants' contention that ICP cannot satisfy this element appears to rest primarily on the premise that the Administrative Procedure Act ("APA") does not permit the court to enjoin defendants to take any of the very specific measures that ICP requests in its complaint. *See* Ds. Mem. 24 ("[T]he APA does not permit the Court to enjoin Defendants to take any of these very specific measures."). But even if the court assumes *arguendo* that ICP cannot obtain injunctive relief of the specific type it seeks, defendants do not appear to assert that

the court is completely powerless to impose *some* form of remedy. *See id.* (arguing that court "could not order Defendants to take any specific actions"); Ds. Reply Mem. 9-10 (recognizing that the court can order the agency to take action, although the court cannot direct how the agency must act, and asserting that the court "could not order Defendants to take any specific actions"). The court therefore concludes that ICP has satisfied the requirement of redressability.

Accordingly, the court holds that ICP has demonstrated that it has Article III standing.

### III

Treasury and OCC move to dismiss ICP's claim under 42 U.S.C. § 3608 based on sovereign immunity. They contend that the APA's waiver of sovereign immunity does not apply because ICP has an adequate remedy at law—a private right of action directly against the entities allegedly discriminating in the provision of housing. Defendants point out that ICP has already availed itself of this remedy by suing the Texas Department of Housing and Community Affairs in this court.

The court recognizes that courts have not been uniform in addressing whether the inadequate remedy requirement of 5 U.S.C. § 704 should be read into claims brought, as here, under the second sentence of 5 U.S.C. § 702. In the absence of binding Fifth Circuit authority, the court concludes that "the conditions of § 704 affect the right of action contained in the first sentence of § 702, but they do not limit the waiver of immunity in § 702's second sentence." *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 775 (7th Cir. 2011) (citing *Veterans for Common Sense v. Shinseki*, 644 F.3d 845, 866-68 (9th Cir.

2011)); *see also id.* (addressing "final agency action" requirement of § 704 and stating that "[a]lthough the United States has argued from time to time that the 'final agency action' requirement of § 704 limits the waiver of immunity in § 702, it has not prevailed on that ground."); *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 187 (D.C. Cir. 2006) (holding that "final agency action" requirement of § 704 did not apply to actions brought under second sentence of § 702); *Ala.-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 489 (5th Cir. 2014) (citing, *inter alia*, *Trudeau*, and holding that when judicial review is sought pursuant to statutory or non-statutory cause of action that arises completely apart from general provisions of the APA, there is no requirement of finality because the finality requirement comes from § 704, which "has been read into § 702 in cases where review is sought pursuant only to the general provisions of the APA"). The court therefore concludes that ICP's claim brought under § 3608 via the second sentence of § 702 is not subject to the requirement of § 704 that "there is no other adequate remedy in a court."

IV

Treasury and OCC contend that ICP's claim that they have violated § 3608(d) is unreviewable under the APA. Without suggesting any other view on this issue, the court rejects this ground of defendants' motion because it is based on the premise that ICP cannot recover under 5 U.S.C. § 706(1), *see* Ds. Mem. 14-16, and ICP is proceeding under 5 U.S.C. § 706(2), *see* Ps. Br. 14. Although Treasury and OCC present arguments in their reply memorandum to support the contention that § 706(2) is inapposite, Ds. Reply Mem. 5-6, this court will not consider arguments raised for the first time in a reply brief. *See, e.g., Jacobs*

- 9 -

*v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) ("[T]he court will not consider an argument raised for the first time in a reply brief." (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.))), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008). Accordingly, the court is not deciding at this time whether ICP can state a plausible claim under 42 U.S.C. § 3608(d) via 5 U.S.C. § 706(2).

V

Treasury and OCC posit that ICP has failed to state a claim under § 3604. They maintain that their actions are too attenuated from the business of providing housing or housing-related services to consumers. ICP maintains that it has adequately pleaded discriminatory effect and discriminatory purpose claims under § 3604(a).

As with ICP's claims under 42 U.S.C. § 1982 and the Fifth Amendment, *see infra* § VI, the court holds that the complaint is too conclusory to plead discriminatory intent. The court therefore grants defendants' motion to dismiss ICP's § 3604-based discriminatory purpose claim.

As for discriminatory effect, after defendants filed their briefs and the court heard oral argument on defendants' motion to dismiss, the Supreme Court decided *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.* ___ U.S. ___, 135 S.Ct. 2507 (2015). In *Inclusive Communities Project* the Court confirmed that a disparate impact claim can be brought under § 3604(a). *Id.* at 2525 ("The Court holds that disparate-impact claims are cognizable under the Fair Housing Act[.]"). ICP has attempted

- 10 -

to plead a disparate impact claim under § 3604(a). *See* Compl. ¶¶ 133-35. Defendants'

motion—written without the benefit of *Inclusive Communities Project*—does not adequately

address this basis for relief. Moreover, *Inclusive Communities Project* contains admonitions

concerning limitations on FHA-based disparate impact claims. *See Inclusive Cmtys. Project*,

135 S.Ct. at 2522-25. It specifically mentions, for example, that "Courts must . . . examine

with care whether a plaintiff has made out a prima facie case of disparate impact[.]" *Id.* at

2523. Accordingly, the court declines at this time to dismiss ICP's § 3604(a) disparate

impact claim, but suggests no view on whether ICP can prevail on such a claim.

VI

Finally, Treasury and OCC contend that ICP has failed to state a claim under either

42 U.S.C. § 1982 or the equal protection component[2] of the Fifth Amendment because ICP

has failed to plead a prima facie case. The court agrees.

These claims require that ICP plausibly plead that defendants acted with a racially

discriminatory intent or purpose. At oral argument, ICP's counsel explained why he

maintained that ICP had plausibly pleaded intentional discrimination. But ICP's complaint

itself is conclusory in alleging that defendants acted with discriminatory intent or purpose,

---

[2]Defendants refer to this as the "Equal Protection Clause." Ds. Reply Mem. 7. "The Fifth Amendment . . . does not contain an equal protection clause as does the Fourteenth Amendment which applies only to the states." *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). It is more precise to refer to the equal protection "component" of the Due Process Clause of the Fifth Amendment. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (referring to "a violation of the equal protection component of the Due Process Clause of the Fifth Amendment").

*see, e.g.,* Compl. ¶¶ 138-139, and is inadequate to allege plausible claims for relief. The court therefore grants defendants' motion to dismiss ICP's § 1982 and Fifth Amendment claims.

## VII

"Because the court's usual practice when granting a motion to dismiss is to permit a plaintiff at least one opportunity to replead, the court will give [ICP] an opportunity to amend [its] complaint." *Shah v. Univ. of Tex. Sw. Med. Sch.*, 54 F.Supp.3d 681, 707 (N.D. Tex. 2014) (Fitzwater, C.J.) (citing *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.)). "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d at 567-68. It is not clear to the court that the shortcomings in the parts of ICP's complaint that are defective are incurable, and ICP has repeatedly referred in its response to defendants' motion to what it would plead in an amended complaint, thereby confirming its willingness to attempt to cure pleading defects by way of amendment. Accordingly, the court grants ICP leave to file an amended complaint within 28 days of the date this memorandum opinion and order is filed.

*   *   *

For the reasons explained, the court grants in part and denies in part defendants'
motion to dismiss, and it grants ICP leave to replead.

**SO ORDERED**.

August 4, 2015.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE